# 24-271-cr

## In the United States Court of Appeals for the Second Circuit

United States of America,

*Appellee*,

v.

Aaron Hicks,

*Defendant-Appellant.*

On Appeal from the United States District Court
For the Western District of New York

### BRIEF FOR APPELLEE
### UNITED STATES OF AMERICA

TRINI E. ROSS
United States Attorney
*Attorney for Appellee*
United States Attorney's Office
138 Delaware Avenue
Buffalo, New York 14202
(585) 399-3951

TIFFANY H. LEE
Assistant United States Attorney
*of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ i

STATEMENT OF JURISDICTION ......................................................... 1

COMBINED STATEMENT OF THE CASE AND FACTS ...................... 2

A.  Hicks is Convicted After Two Jury Trials ............................................. 2

B.  Hicks's Motion Pursuant to 28 U.S.C. § 2255 ....................................... 3

C.  The District Court's Denial of Hicks's Motion to Recuse ..................... 6

STATEMENT OF THE ISSUE .................................................................. 7

SUMMARY OF THE ARGUMENT ......................................................... 8

ARGUMENT .............................................................................................. 8

     The District Court Did Not Abuse Its Discretion When It Denied
     Hicks's Motion for Its Recusal ............................................................... 8

A.  Standard of Review ............................................................................... 8

B.  Governing Law on 28 U.S.C. §§ 455(a) or (b)(1), Generally ................ 9

C.  Governing Law on 28 U.S.C. § 1746 .................................................... 11

D.  Discussion .............................................................................................. 12

CONCLUSION ........................................................................................... 18

CERTIFICATION……………………………………………………….*attached*

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326 (2d Cir. 1987) .................11, 13

*Berger v. United States*, 255 U.S. 22 (1921)...................................................... 10

*Bonds v. Cox*, 20 F.3d 697 (6th Cir. 1994) ......................................................... 12

*Diamondstone v. Macaluso*, 148 F.3d 113 (2d Cir. 1998) ................................ 15

*In re IBM Corp.*, 618 F.2d 923 (2d Cir. 1980) ................................................... 10

*ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98 (2d Cir. 2012) ............... 8

*LeBoeuf, Lamb, Greene & MacCrae, L.L.P. v. Worsham*, 185 F.3d 61 (2d Cir. 1999)
........................................................................................................................ 12

*Liteky v. United States*, 510 U.S. 540 (1994)........................................... 9, 10, 16

*LoCascio v. United States*, 473 F.3d 493 (2d Cir. 2007)........................... 8, 10, 13

*Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953 (2d Cir. 1978) ....... 10

*Puente v. Ridge*, 324 F. App'x 423 (5th Cir. 2009)............................................ 11

*Reynolds v. Sealift, Inc.*, 311 F. App'x 422 (2d Cir. 2009)................................ 11

*Rosen v. Sugarman*, 357 F.2d 794 (2d Cir. 1966)............................................ 10

*Russell v. Cook Cnty.*, 661 F. App'x 443 (7th Cir. 2016)................................... 12

*Traguth v. Zuck*, 710 F.2d 90 (2d Cir. 1983) .................................................... 15

*United States v. Aiyer*, 33 F.4th 97 (2d Cir. 2022) ........................................... 17

*United States v. Bayless*, 201 F.3d 116 (2d Cir. 2000) ........................................ 9

*United States v. Carlton*, 534 F.3d 97 (2d Cir. 2008)....................................... 15

*United States v. Durrani*, 835 F.2d 410 (2d Cir. 1987) .................................... 14

*United States v. Hicks*, 5 F.4th 270 (2d Cir. 2021) ........................................ 1, 2

*United States v. IBM Corp.*, 475 F. Supp. 1372 (S.D.N.Y. 1979)...................... 10

*United States v. Moon*, 718 F.2d 1210 (2d Cir. 1983) ...................................... 17

*United States v. Rechnitz*, 75 F.4th 131 (2d Cir. 2023) ....................... 8, 9, 15, 16

*United States v. Wedd*, 993 F.3d 104 (2d Cir. 2021) .......................................... 8

## Federal Statutes

18 U.S.C. § 1962(d)............................................................................................... 1

18 U.S.C. § 3231 .................................................................................................... 1

28 U.S.C. § 455(a).......................................................................................*passim*

28 U.S.C. § 455(b).......................................................................................*passim*

i

28 U.S.C. § 455(b)(5)(iv) ................................................................ 17

28 U.S.C. § 1291 ............................................................................ 2

28 U.S.C. § 1746 .................................................................... *passim*

28 U.S.C. § 2255 ............................................................... 2, 3, 14

## STATEMENT OF JURISDICTION

The district court (Arcara, J.) had jurisdiction pursuant to 18 U.S.C. § 3231, by reason of charges of a Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, a narcotics conspiracy, and firearms violations of Title 18 and 21 of the United States Code filed against Defendant-Appellant Aaron Hicks in a superseding indictment. (*See* A[1] 6 at DE 17). After a trial in 2017, a jury returned a guilty verdict on Count 2 involving marijuana conspiracy and a not-guilty verdict on Count 3 involving the firearms charge; the jury was unable to return a verdict on Count 1 charging RICO conspiracy in violation of 18 U.S.C. § 1962(d). (A 25, at DE 258). A second trial was held and, on May 2, 2018, a jury returned a guilty verdict on the single RICO conspiracy count. (*See* A 37, at DE 432).

On February 27, 2019, the district court sentenced Hicks to an aggregate term of imprisonment of 360 months and an aggregate term of supervised release of 4 years. (*See* A 43, at DE 473). This Court affirmed. *United States v. Hicks*, 5 F.4th 270 (2d Cir. 2021), *cert. denied*, 142 S.Ct. 1157 (2022).

---

[1] References to "A #" are to page numbers in the Appendix filed with Hicks's brief. References to "DE" are to Docket Entries in *United States v. Hicks, et al.*, W.D.N.Y., 1:15-cr-00033-RJA-HBS-1.

On February 21, 2023, Hicks moved to vacate his sentence pursuant to 28 U.S.C. § 2255. (*See* A 54, at DE 964). On August 14, 2023, Hicks moved to recuse the district court. (A 57-71). The district court denied the motion to recuse on January 16, 2024 (A 97-115), and Hicks filed a timely notice of appeal on January 30, 2024 (A 116).

This Court has jurisdiction to review final decisions pursuant to 28 U.S.C. § 1291.

## COMBINED STATEMENT OF THE CASE AND FACTS

### A.  Hicks is Convicted After Two Jury Trials

On October 13, 2017, after trial, a jury convicted Hicks on Count 2 (narcotics conspiracy (involving marijuana only)), and found him not guilty on Count 3 (firearms offense), but could not render a verdict on Count 1 (RICO conspiracy). (DE 258).

The second trial, a retrial on Count 1 (RICO conspiracy) only, began on April 10, 2018, and a jury ultimately found Hicks guilty on that count. (DE 432). The district court thereafter sentenced Hicks to 240 months' imprisonment on Count 1 and a consecutive term of 120 months' imprisonment on Count 2, and entered a judgment of conviction on February 28, 2019. (DE 473). Hicks appealed and this Court affirmed on July 16, 2021. *Hicks*, 5 F.4th at 270-279.

### B. Hicks's Motion Pursuant to 28 U.S.C. § 2255

On February 21, 2023, Hicks moved *pro se* to vacate his sentence pursuant to 28 U.S.C. § 2255. (DE 964). With the district court's having already granted leave to amend his original motion, Hicks later filed a second motion to amend on April 25, 2023. (DE 1005). In his second motion to amend, Hicks included a "Supporting Affidavit" from Patricia Kessel, who served as a juror at Hicks's first trial in 2017, and an undated "Supporting Affidavit" from Charlene Barbary, a juror who served at his second trial in 2018. (*Id.*).

On August 14, 2023, Hicks moved *pro se* to recuse the district court judge pursuant to 28 U.S.C. §§ 455(a) and 455(b). Hicks alleged that, after his second trial, he retained the services of a private investigator and learned of purported improprieties involving the jury during both trials. (A 57-61). As part of his motion, Hicks again included the still-undated Barbary "Supporting Affidavit" (A 62-64) and the Kessel "Supporting Affidavit" (A 66-67). While neither "Supporting Affidavit" were notarized, they each contained declarations under penalty of perjury and made pursuant to 28 U.S.C. §1746. (A 62-64; A 66-67). Hicks also included, as part of his motion to recuse, an internet article from an entity called "Filter," entitled "Bombshell Paper Names the Federal Judges Guilty of the Most Racist Sentencing," written by Roy Fleming, and dated

August 2, 2021,[2] identifying federal judges who "demonstrated racist sentencing disparities," to include the presiding judge in his two trials. (A 68-70).

The Barbary declaration indicated that Barbary was the only African American juror and that, with the exception of a Puerto Rican juror, the rest of the jury was comprised of Caucasians. (A 63). The declaration alleged that the rest of the jury was not happy with Barbary's initial not-guilty vote, and that Barbary had an encounter in chambers alone with the judge where the judge purportedly told Barbary that he had explained to Hicks that if Hicks did not take a plea and went to trial, he would lose the trial and be sentenced to the maximum of between 25 to 30 years to life. (A 64). According to Barbary, she thereafter changed her vote to guilty as a result of the pressure she felt from the judge and other members of the jury. (*Id.*).

The Kessel declaration alleged that many jurors appeared to be stereotyping Hicks based on his skin color and the neighborhood in Buffalo from where he came, that she felt intimidated by the other jurors, and that she had voiced her concerns to the foreperson who had written a note to the court although she was not privy to the contents of that note. (A 67). The Kessel

---

[2] https://filtermag.org/federal-judges-racist-sentencing/ (visited on September 19, 2024).

declaration further described that she believed there was a disregard for the jury instructions both at the time of deliberation and during the trial in that she observed some jurors discussing the case before the trial had concluded. (*Id*.).

Relying primarily on the Barbary declaration and the purported *ex parte* communication between Barbary and the district court, Hicks argued that, based on "improprieties that may have occurred during the trial, specifically during jury deliberations," the court should recuse itself from all further proceedings in his case. (A 59-61). Hicks made no argument as to how the online article furthered his motion for recusal of the district court. (*See id*.).

The government opposed, arguing that: (1) the Barbary declaration was defective under 28 U.S.C. § 1746 because it was undated; (2) Hicks's motion to recuse was untimely given when the Barbary and Kessel declarations were first available to him; (3) Kessel's declaration failed to provide any basis for recusal; (4) Hick's reliance on the internet article was also untimely; (5) Hicks's failure to raise any argument in his motion premised on the internet article deemed his continued reliance on it waived; and (6) the internet article itself failed to provide a ground for recusal. (A 81).

Hicks replied and argued that he should be held to a lesser standard because he was proceeding *pro se*, that his investigator could establish that the

5

Barbary declaration was signed on April 23, 2023, and that the substance of his claim for recusal was premised on the alleged *ex parte* communications. (A 94).

### C. The District Court's Denial of Hicks's Motion to Recuse

The district court denied the motion to recuse. (A 97-115). The court noted that the materials Hicks submitted in support of his motion for recusal were all "facially insufficient to establish the sort of bias or prejudice necessary to warrant recusal." (A 105). The district court determined it would exercise its discretion and not admit the Barbary declaration because it was undated and, as such, deficient under 28 U.S.C. § 1746. (A 107-08). The district court further held that the motion for recusal was untimely. (A 109). "Hicks waited nearly four months with respect to the Barbary declaration and over six months with respect to the Kessel declaration to move for the Court's recusal, offering no 'good cause' for the delay." (A 110).

Alternatively, the district court found that neither the Kessel declaration nor the Barbary declaration established any personal bias by the court. (A 111). The district court acknowledged that during deliberations at Hicks's second trial, the foreperson had sent a note indicating that Juror Barbary had requested to be dismissed on the ground that she was uncomfortable with making a finding based on her race. (A 99). The district court recalled that it had conducted a closed-courtroom, on-the-record discussion with Juror Barbary in the presence

6

of the parties. (A 99 [Decision and Order, p. 3 n.2]). The court further noted "[h]aving served as a United States District Judge for more than 35 years, the Court has never once had a juror in chambers, nor has the Court communicated with any juror in any case without the parties in such case being present." (*Id.*). Upon review of the facts and allegations set forth by Hicks, the district court concluded: "At best, both juror declarations merely suggest that there may have been some bias exhibited by other jurors. The declarations cannot fairly be read even to suggest bias or prejudice by the Court." (*Id.*).

Finally, the court found that the August 2021 internet article discussing purported sentencing disparities in federal court also likewise failed to support Hicks's recusal motion. (A 112-15). Not only had Hicks waived any reliance on the article by failing to put forth any identifiable argument regarding his recusal motion related to the article, but the article itself did not "concern activity from an extrajudicial source that would cause an objective observer to question the Court's impartiality *** and no mandatory provision of recusal contained in § 455(b) is applicable." (A 113-14).

This appeal ensued. (A 116).

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion when it denied Hicks's motion for recusal filed pursuant to 28 U.S.C. §§ 455(a) and 455(b).

7

## SUMMARY OF THE ARGUMENT

The district court acted within its discretion when it denied Hicks's motion for recusal. One of the supporting declarations upon which Hicks principally relies is undated and does not substantially comport with 28 U.S.C. § 1746. Moreover, Hicks's motion for recusal was untimely and he failed to proffer any "good cause" for the delay in filing. Finally, none of the allegations contained within the declarations or the online article provides a basis for recusal under either § 455(a) or § 455(b). Accordingly, this Court should affirm the district court's decision in its entirety.

## ARGUMENT

### The District Court Did Not Abuse Its Discretion When It Denied Hicks's Motion for Its Recusal

#### A. Standard of Review

This Court reviews the denial of a recusal motion for abuse of discretion. *United States v. Wedd*, 993 F.3d 104, 115 (2d Cir. 2021) (citing *LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir. 2007)). This Court will "rarely" disturb a district court's decision not to recuse itself. *United States v. Rechnitz*, 75 F.4th 131, 142 (2d Cir. 2023) (citing *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012)).

**B.    Governing Law on 28 U.S.C. §§ 455(a) or (b)(1), Generally**

A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) "adopts the objective standard of a reasonable observer." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000).

> [A] court of appeals must ask the following question: Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?

*Id.* What matters under § 455(a) is "'not the reality of bias or prejudice but its appearance.'" *Rechnitz*, 75 F.4th at 142 (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)). Section 455(b), while operating "differently," complements § 455(a) by mandating recusal in certain circumstances where partiality is presumed, such as where a judge has a "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b); *see also Rechnitz*, 75 F.4th at 143; *Bayless*, 201 F.3d at 126.

"'Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-

9

seated favoritism or antagonism that would make fair judgment impossible.'" *LoCascio*, 473 F.3d at 495–96 (quoting *Liteky*, 510 U.S. at 555). A judge has an "affirmative duty" to inquire into the legal sufficiency of a declaration asserting prejudice "and not to disqualify himself unnecessarily, particularly 'where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.'" *Id.* at 498 (citing *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978) (quoting *Rosen v. Sugarman*, 357 F.2d 794, 797–98 (2d Cir. 1966))). That said, courts must accept as true declarations submitted for the purpose of ruling upon their legal sufficiency, however unfounded they may be in fact. *United States v. IBM Corp.*, 475 F. Supp. 1372, 1379 (S.D.N.Y. 1979) (citing *Berger v. United States*, 255 U.S. 22, 36 (1921)), *aff'd sub nom. In re IBM Corp.*, 618 F.2d 923 (2d Cir. 1980).

Although not expressly included in § 455, this Court has read a timeliness requirement for recusal motions. *In re IBM Corp.*, 618 F.2d at 932. "[R]ecusal motions are to be made at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *LoCascio*, 473. F.3d at 497 (internal quotation omitted)). Prompt recusal applications afford the district judge a chance to assess the merits of the application before taking any additional steps that may be inappropriate; and avoid the risk that a party may

10

withhold moving for recusal as a "fall-back position" to challenge adverse rulings later on. *Id*. In assessing whether a recusal motion is timely, the relevant factors include "whether: (1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 334 (2d Cir. 1987) (internal citations omitted).

## C.    Governing Law on 28 U.S.C. § 1746

Section 1746 provides that an unsworn matter may be treated as sworn, provided that it is "prove[n] by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, *and dated,* in substantially the ... form" of the model declaration provided. 28 U.S.C. § 1746 (emphasis added). For example, a district court acted within its discretion in excluding unsworn declarations, three of which lacked a precise date. *Reynolds v. Sealift, Inc.*, 311 F. App'x 422, 425 (2d Cir. 2009) (Summary Order) (citing 28 U.S.C. § 1746). Other courts have held that the failure to include a date renders the declarations deficient under the statute. *See e.g.*, *Puente v. Ridge*, 324 F. App'x 423, 430 n.8 (5th Cir. 2009) (unpublished) ("undated, unnotarized statement" failed to comply with § 1746),

11

*Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) (undated declarations must be excluded from consideration); *Russell v. Cook Cnty.*, 661 F. App'x 443, 445 (7th Cir. 2016), (unpublished) (declarations under § 1746 or notarized statements need to show "exactly when the document was signed.").

### D. Discussion

The district court acted within its discretion when it determined that the materials submitted in support of Hicks' recusal motion -- two juror declarations and an online magazine article -- were legally insufficient to warrant recusal. The Barbary declaration did not comport with the express dictates of 28 U.S.C. § 1746. And, when looking at the dates when Hicks's purported grounds for recusal were made known to him, his motion to recuse was wholly untimely. In any event, neither the declarations nor the online magazine article could be read to establish any actual personal bias or appearance of bias by the district court.

Turning first to the district court's rejection of the Barbary declaration, 28 U.S.C. § 1746 expressly requires that the declaration be dated, and this declaration failed to meet that basic standard. Thus, the district court acted well within its discretion to decline to accept it. To the extent that this Court has noted that substantial compliance with § 1746 is sufficient, that substantial compliance nevertheless requires inclusion of a date. *See LeBoeuf, Lamb, Greene & MacCrae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999). Accordingly,

Hicks cannot demonstrate that the district abused its discretion by rejecting the Barbary declaration in the first instance.

As for the district court's determination that Hicks's recusal motion was untimely, this Court has explicitly held that recusal motions must be made "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *LoCascio,* 473 F.3d at 497. This is so the judge can assess the merits "before taking any further steps that may be inappropriate for the judge to take" and "to avoid the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters." *Id.* Hicks failed to do so.

Upon consideration of the *Apple* factors, the motion is wholly untimely. *Apple*, 829 F.2d at 334. Hicks actively participated in his litigation over the course of two trials which occurred in 2017 and 2018, and his August 2022 motion for recusal was well after final judgment was entered into on February 28, 2019. (DE 473). After this Court affirmed the conviction and the mandate entered on September 17, 2021, the district court judge presided over Hicks's *pro se* motion for compassionate release. (DE 677).

Hicks knew of the contents of the Kessel declaration as early as February 9, 2023 (A 67), and was in possession of the Barbary declaration as early as April 25, 2023 (DE 1005). Based on information contained on the printout of the

13

internet article, Hicks was possibly aware of its contents as early as February 24, 2022. (A 69). And yet he still waited until August 2023 before filing his motion to recuse, six months after filing his original motion pursuant to 28 U.S.C. § 2255 on February 21, 2023 (DE 965), and four months after filing his amended motion on April 25, 2023 (DE 1005). Hicks's delay rendered his motion untimely. *See United States v. Durrani*, 835 F.2d 410, 427 (2d Cir. 1987) (affirming the district court's denial of the disqualification motion as untimely where "four months passed between the events of which appellant complains and the filing of the motion to disqualify").

On this appeal, and for the first time, Hicks asserts that he had good cause for the delay because he was physically transferred between prisons during the April 2023 to August 2023 time period. (Hicks's Brief, p. 10). However, this transfer does not explain why he could not have filed his motion to recuse at the same time as his amended 28 U.S.C. § 2255 on April 25, 2023, or on February 21, 2023, when he filed his original motion under § 2255 (when he was in possession of, at the very least, the Kessel declaration signed on February 9, 2023 and, potentially, the online magazine article).

Hicks complains that the court should have afforded him with greater leeway in that he was acting *pro se*. (Hicks's Brief, pp. 4-6). However, while trial courts have been directed to read *pro se* papers liberally, and to permit

14

amendment of *pro se* complaints freely, the right of self-representation "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

In any event, the district court took the extra step of reviewing the legal sufficiency of the supporting material underlying the claim for recusal both under the objective lens of section 455(a), and under the circumstances enumerated in section 455(b), and concluded that neither the juror declarations nor the online article established bias or prejudice by the district court.

Upon reviewing the Barbary declaration, while any *ex parte* between the court and the juror would have been inappropriate,[3] *see Rechnitz*, 75 F.4th at 146 (*ex parte* communications disfavored "particularly in the criminal context"), the salient question under section 455(a) is whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (citing *Diamondstone v. Macaluso*, 148 F.3d 113, 121

---

[3] Here, the district court recalled a discussion with Juror Barbary but advised that it was an on-the-record discussion, in the presence of the parties and that it did not, and never had in 35 years of service, undertaken an *ex parte* discussion with a juror. (A 99).

15

(2d Cir. 1998) (internal citations omitted)). Under this rubric, assuming that the district court had indeed told juror Barbary *ex parte* that Hicks had been advised that if he did not take a plea and went to trial, he would lose, and that the court would sentence Hicks to a maximum potential sentence of 25 to 30 years to life, such a comment nonetheless fails to demonstrate "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* (quoting *Liteky*, 510 U.S. at 555); *compare with Rechnitz*, 75 F.4th at 143-44 (district judge abused its discretion by not recusing himself where not only did he have a "close, near-paternal" relationship with a participant in the criminal conduct with which the defendant was charge, but also advised this participant on his criminal case). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

The Kessel declaration is even further removed from the recusal framework; while the declaration discusses intimidation by other jurors, other than a mention of a note that the foreperson allegedly gave the district court, the declaration does not contain any allegation pertaining to communications made by the court to Ms. Kessel, *ex parte* or otherwise, evincing any bias or prejudice. (A 66-67). And as for the online magazine article with its vague claims

16

pertaining to purported racial sentencing disparities, the article's allegations similarly fall short of providing support for recusal under § 455(a).

Likewise, under § 455(b), the contents of the declarations and the article fail to demonstrate any "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b). Hicks argues that recusal is mandated specifically under 28 U.S.C. § 455(b)(5)(iv) because the district court judge is likely to be a material witness in the § 2255 proceeding because he would have to testify pertaining to his *ex parte* interaction with Barbary. (Hicks Brief, p. 15). Hicks conflates the idea of juror misconduct or *ex parte* interactions with indicators or appearances of bias. (Hicks's Brief, p.16). While a district court has an obligation to investigate credible allegations of juror misconduct, a hearing into such allegations is required ""only when reasonable grounds for investigation exists'" and "'reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant.'" *United States v. Aiyer*, 33 F.4th 97, 128 (2d Cir. 2022) (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) (internal citation omitted)). No such grounds exist here even taking the claims in the Barbary declaration as true.

Accordingly, Hicks has not demonstrated that the district court abused its discretion when it concluded that the supporting documentation was insufficient to support his claim for recusal or to raise a cognizable claim for recusal.

## CONCLUSION

The district court did not abuse its discretion in denying the motion for recusal and, for the foregoing reasons, this Court should affirm the district court's decision and order.

Dated: September 20, 2024, Rochester, New York.

Respectfully submitted,

TRINI E. ROSS
UNITED STATES ATTORNEY
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202

By:    s/ *Tiffany H. Lee*
TIFFANY H. LEE
Assistant United States Attorney
        *Of counsel*

18

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

          Appellee,               CA # 24-271-cr

      -v-

AARON HICKS

          Defendant-Appellant.

I, TIFFANY H. LEE, Assistant United States Attorney for the Western District of New York, hereby certify that the foregoing brief complies with this Court's Local Rule 32.1(a)(4)(A) word limitation in that the brief is calculated by the word processing program to contain approximately 4,030 words, exclusive of the Table of Contents, Table of Authorities and Addendum of Statutes and Rules.

          *s/Tiffany H. Lee*

          TIFFANY H. LEE
          Assistant U.S. Attorney